FARGO WOMEN'S HEALTH ORGANI-
ZATION, Susan Wicklund, M.D., George
M. Miks, M.D., Cynthia Palmer, Craig
Shoemaker, M.D., and Jane Doe, Plain-
tiffs,

v.

George SINNER, as Governor of the State
of North Dakota; Nicholas Spaeth, as
Attorney General of the State of North
Dakota, Defendants.

Civ. No. A3–91–95.

United States District Court,
D. North Dakota,
Southeastern Division.

Feb. 19, 1993.

C. Nicholas Vogel, Mart Daniel Vogel, Vo-
gel, Brantner, Kelly, Knutson, Weir & Bye,
Ltd., Fargo, ND, Janet Benshoof, Suzanne
Shende, Kathryn Kolbert, American Civil
Liberties Union Foundation, Simon Heller,
Center for Reproductive Law & Policy, New
York City, for Fargo Women's Health Orga-
nization.

C. Nicholas Vogel, Mart Daniel Vogel, Vo-
gel, Brantner, Kelly, Knutson, Weir & Bye,
Ltd., Fargo, ND, for Susan Wicklund MD,
George M. Miks MD, Cynthia Palmer, Craig
Shoemaker, MD, Jane Does.

Sidney Hertz Fiergola, Atty. General's Of-
fice, Laurie J. Loveland, Bismarck, ND, for
defendants.

## MEMORANDUM AND ORDER

WEBB, Chief Judge.

This action challenges the constitutionality
of a state criminal statute that plaintiffs as-
sert interferes with the performance of abor-
tions. Jurisdiction is conferred by 28 U.S.C.
§ 1331, as the action arises under the Consti-
tution and laws of the United States. The
parties stipulated to dismissal of all state law
claims (docket # 24). Plaintiffs' motion for
class certification (docket # 44) and defen-
dants' motion for summary judgment (docket
# 55) are before the court. Pursuant to
*Planned Parenthood v. Casey,* — U.S. —,
112 S.Ct. 2791, 120 L.Ed.2d 674 (1992), the
court holds that the statute is facially consti-
tutional. Defendants' motion for summary
judgment is **GRANTED** and the case is **DIS-
MISSED.** The court's order dated August
23, 1991, (docket # 35), issuing a preliminary
injunction suspending enforcement, imple-
mentation and execution of House Bill 1579,
is **VACATED.** Plaintiffs' motion for class
certification is **DENIED** as moot.

### 1. Background

Plaintiffs challenge certain provisions of
the North Dakota Abortion Control Act
(hereinafter "Act"), N.D.Cent.Code ch. 14–
02.1 (1991), along with amendments to the
Act contained in House Bill 1579 (hereinafter
"HB 1579"). HB 1579 was signed into law
on April 1, 1991, by then Governor George A.
Sinner.[1] However, on August 23, 1991, this

---

1. Although the court is fully aware that Edward
T. Schafer and Heidi Heitkamp now serve as

Governor and Attorney General, respectively, the

court issued a preliminary injunction suspending enforcement, implementation and execution of HB 1579 (docket # 35).

Plaintiffs challenge two provisions of the Act as it existed prior to HB 1579. The first challenge is to the definition of abortion contained in N.D.Cent.Code § 14–02.1–02(1): " 'Abortion' means the termination of human pregnancy with an intention other than to produce a live birth or to remove a dead embryo or fetus." Also challenged is the Act's general penalty provision, which provides as follows: "**General penalty.** A person violating any provision of this chapter for which another penalty is not specifically prescribed is guilty of a class A misdemeanor. Any person willfully violating a rule or regulation promulgated under this chapter is guilty of an infraction." N.D.Cent.Code § 14–02.1–11 (1991).

Plaintiffs also challenge amendments to the Act contained in HB 1579. Section one of HB 1579 requires the physician performing the abortion, the referring physician, or the physician's agent, to provide certain information to the patient at least 24 hours before the abortion:

(1) The name of the physician who will perform the abortion;

(2) The particular medical risks associated with the particular abortion procedure to be employed including, when medically accurate, the risks of infection, hemorrhage, danger to subsequent pregnancies, and infertility;

(3) The probable gestational age of the unborn child at the time the abortion is to be performed; and

(4) The medical risks associated with carrying her child to term.

N.D.Cent.Code § 14–02.1–02(5) (1991).

Part two of section one requires the physician or the physician's agent to provide additional information to the patient at least 24 hours prior to the abortion: (1) that medical assistance benefits may be available for prenatal care, childbirth, and neonatal care; (2) that the father is liable to assist in the support of the child even when he has offered to pay for the abortion; and (3) that the patient

has a right to review printed material provided by the state of North Dakota. *Id.* The patient must also certify in writing that she has received the information required to be provided, and that she was informed of her opportunity to review the information. *Id.* Before the performance of the abortion, the performing physician or the physician's agent must receive a copy of the written certification. *Id.*

Section two of HB 1579 creates two new subsections to section 14–02.1–02 of the Century Code, defining "medical emergency" and "probable gestational age of the unborn child." *See* N.D.Cent.Code § 14–02.1–02(7) and (8) (1991).

Finally, section three of HB 1579 creates a new section to chapter 14–02.1 of the Century Code and details the printed information that the state must make available, pursuant to the informed consent provisions contained in section one of HB 1579. *See id.* § 14–02.1–02.1 (1991). Section four of HB 1579 requires that a physician, except in medical emergencies, obtain informed consent prior to performing an abortion. *See id.* § 14–02.1–03 (1991).

**2. Summary Judgment**

 Rule 56 of the Federal Rules of Civil Procedure "mandates the entry of summary judgment ... against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Summary judgment is improper if the court finds a genuine issue of material fact; however, the mere existence of some alleged factual dispute will not defeat an otherwise properly supported motion. *Vacca v. Viacom Broadcasting of Mo., Inc.,* 875 F.2d 1337, 1339 (8th Cir.1989). "Summary judgment 'should not be granted unless the moving party has established the right to a judgment with such clarity as to leave no room for controversy.' " *Id.* (quoting *Snell v. United States,* 680 F.2d 545, 547

parties failed to make a motion to amend the case caption.

(8th Cir.), *cert. denied,* 459 U.S. 989, 103 S.Ct. 344, 74 L.Ed.2d 384 (1982)).

### 3. Discussion

■ It should be noted initially that plaintiffs are challenging the facial validity of the statutory provisions in question. Therefore, the only concern is whether, on its face, the Act "can be construed in such a manner that [it] can be applied to a set of individuals without infringing upon constitutionally protected rights." *Rust v. Sullivan,* — U.S. —, —, 111 S.Ct. 1759, 1767, 114 L.Ed.2d 233 (1991). The plaintiffs face a particularly heavy burden in their efforts to invalidate the statutory provisions as facially unconstitutional. "A facial challenge to a legislative Act is ... the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the Act would be valid. The fact that the ... Act might operate unconstitutionally under some conceivable set of circumstances is insufficient to render it wholly invalid, since we have not recognized an 'overbreadth' doctrine outside the limited context of the First Amendment." *United States v. Salerno,* 481 U.S. 739, 745, 107 S.Ct. 2095, 2100, 95 L.Ed.2d 697 (1987). *See also Rust,* — U.S. at —, 111 S.Ct. at 1767.[2] In light of the *Casey* Court's holding that statutory provisions nearly identical to those in the instant case were facially constitutional, the plaintiffs cannot satisfy the heavy burden required for a successful facial challenge.

Due to the similarity between the issues in this case and *Casey,* the court in its order dated January 28, 1992, (docket # 51), accepted the parties' stipulation to delay filing motions for summary judgment until after the decision in *Casey.* The parties noted in their stipulation that "many of the statutory provisions at issue in [*Casey* ], specifically regarding the definition of informed consent, a waiting period before abortion procedures may be performed, and the definition of medical emergency, are similar to the provisions of the North Dakota Abortion Control Act (as amended in 1991) at issue in this case...." Stipulation at 1 (docket # 50).

The court certainly agrees that the statutory provisions in the Pennsylvania Act involved in *Casey* and the North Dakota Act are similar. More striking yet are the similarities between the North Dakota Act and the Mississippi Act upheld in *Barnes v. Moore,* 970 F.2d 12 (5th Cir.), *cert. denied,* — U.S. —, 113 S.Ct. 656, 121 L.Ed.2d 582 (1992). Like the Mississippi Act, the North Dakota Act does not contain the Pennsylvania Act's exception to the penalty for violation of the informed consent provisions: "[T]he statute ... does not require a physician to comply with the informed consent provisions 'if he or she can demonstrate by a preponderance of the evidence, that he or she reasonably believed that furnishing the information would have resulted in a severely adverse effect on the physical or mental health of the patient.' " *Casey,* — U.S. at —, 112 S.Ct. at 2824 (quoting 18 Pa.Cons.Stat. § 3205 (1990)). Nonetheless, the North Dakota Act's definitions of "abortion" and "medical emergency" are substantially similar to those found in the Mississippi and Pennsylvania Acts. Like the Mississippi Act, the North Dakota Act allows a physician to rely on his or her "best clinical judgment" in determining whether a condition constitutes a "medical emergency." N.D.Cent.Code § 14–02.1–02(7) (1991). Furthermore, one must willfully violate the North Dakota Act in order to be subject to criminal penalties. *Id.* § 14–02.1–11 (1991).

---

**2.** Plaintiffs argue that the fact intensive inquiry by the Supreme Court in *Planned Parenthood v. Casey,* — U.S. —, 112 S.Ct. 2791, 120 L.Ed.2d 674 (1992), signifies a new standard of review for facial challenges. However, the United States Court of Appeals for the Fifth Circuit dispensed with a similar argument in *Barnes v. Moore,* 970 F.2d 12, 14 n. 2 (5th Cir.) ("[W]e do not interpret *Casey* as having overruled, *sub silentio,* longstanding Supreme Court precedent governing challenges to the facial constitutionality of statutes."), *cert. denied,* — U.S. —, 113 S.Ct. 656,

121 L.Ed.2d 582 (1992). *See also Ada v. Guam Soc'y of Obstetricians & Gynecologists,* — U.S. —, —, 113 S.Ct. 633, 634, 121 L.Ed.2d 564 (1992) (Scalia, J., dissenting from denial of certiorari) (Court in *Casey* did not purport to change rule for facial challenges). It is clear that in explaining the "undue burden" analysis, "the authors of the joint opinion [in *Casey* ] were 'set[ting] forth a standard of general application'." *Barnes,* 970 F.2d at 15 (quoting *Casey,* — U.S. at —, 112 S.Ct. at 2820). The Court was not creating a new standard of review for facial challenges.

Again, this is substantially similar to the penalty provision in the Mississippi Act. *See Barnes,* 970 F.2d at 15. Clearly, the differences between the North Dakota Act and the Mississippi and Pennsylvania Acts do not dictate a finding that the North Dakota Act is facially unconstitutional.

Plaintiffs have raised numerous challenges to the North Dakota Act, generally urging the court to "make a factual assessment of the degree of burden imposed by restrictions on the right to choose abortion." Plaintiffs' Brief in Opposition to Defendants' Motion for Summary Judgment at 28 (docket # 63). The court will not engage in the requested burden assessment. Although the temptation is to embark on an analysis of the new "undue burden" standard set forth in *Casey,*[3] the court should not be asked in a facial challenge to invalidate a legislative act "based upon a worst-case analysis that may never occur." *Ohio v. Akron Center for Reproductive Health,* 497 U.S. 502, 514, 110 S.Ct. 2972, 2981, 111 L.Ed.2d 405 (1990). Plaintiffs should save their arguments regarding the degree of burden imposed by these statutory restrictions for an as-applied challenge to the Act's constitutionality. Though it may be true that "North Dakota ain't Pennsylvania,"[4] and while the court is not unsympathetic to the burdens a woman may face when seeking to have an abortion in North Dakota, "differences between the [North Dakota] and Pennsylvania Acts are not sufficient to render the former unconstitutional on its face." *Barnes,* 970 F.2d at 15 (footnote omitted).

The court has carefully considered plaintiffs' remaining arguments regarding the constitutionality of the statute, including assertions that certain definitional sections are void for vagueness, and considers them to be without merit. Therefore,

1. Defendants' motion for summary judgment is **GRANTED** and the case is **DISMISSED.**

2. The court's August 23, 1991, order is **VACATED.**

3. Plaintiffs' motion for class certification is **DENIED** as moot.

**IT IS SO ORDERED.**

---

**3.** The joint opinion in *Casey* defined an "undue burden" in the following way:

> A finding of an undue burden is a shorthand for the conclusion that a state regulation has the purpose or effect of placing a substantial obstacle in the path of a woman seeking an abortion of a nonviable fetus. A statute with this purpose is invalid because the means chosen by the State to further the interest in potential life must be calculated to inform the woman's free choice, not hinder it. And a statute which, while furthering the interest in potential life or some other valid state interest, has the effect of placing a substantial obstacle in the path of a woman's choice cannot be considered a permissible means of serving its legitimate ends.

*Casey,* —— U.S. ——, 112 S.Ct. at 2820.

**4.** The reference is to language contained in footnote five of the opinion in *Barnes,* 970 F.2d at 15 n. 5. In *Barnes,* the plaintiffs, who challenged Mississippi's Informed Consent to Abortion Act, urged the court to remand for further evidentiary proceedings so that the plaintiffs could attempt to prove in a facial challenge that the Mississippi Act posed an "undue burden" on women seeking abortions in Mississippi. *Id.* at 15. This court, as did the court in *Barnes,* has already addressed and rejected plaintiffs' argument regarding the correct standard for facial challenges. *See supra* n. 2.