PLANNED PARENTHOOD, SIOUX FALLS CLINIC; Buck J. Williams, M.D.; and Women's Medical Services, P.C., Plaintiffs,

v.

Walter D. MILLER, Governor; and Mark W. Barnett, Attorney General; in their official capacities, Defendants.

No. CIV. 93–3033.

United States District Court, D. South Dakota, Western Division.

Aug. 22, 1994.

Michael B. Crew, Crew & Crew, Sioux Falls, SD, Colleen K. Connell, The Roger Baldwin Foundation of ACLU, Inc., Lori Chaiten, Sonnenochein, Nath & Rosenthal, Chicago, IL, Dara Klassel, Beth Otten, Roger K. Evans, Planned Parenthood Federation of America, Inc., Legal Action for Reproductive Rights, New York City, for plaintiffs.

Mark W. Barnett, John P. Guhin, Atty. General's Office, Pierre, SD, for defendants.

### MEMORANDUM OPINION

BATTEY, Chief Judge.

### NATURE AND PROCEDURAL HISTORY

This action was filed by Planned Parenthood, Sioux Falls Clinic; Buck J. Williams, M.D.; and Women's Medical Services, P.C., on June 15, 1993. Defendant is the state of South Dakota, represented by Walter D. Miller and Mark W. Barnett, its governor and attorney general respectively. The complaint challenges the constitutionality of certain parts of Chapter 249 of the South Dakota Session Laws (HB 1131) entitled, "An Act to Regulate the Performance of Abortion," which amends South Dakota Codified Laws (SDCL) Chapter 34-23A.

The Court has jurisdiction under 28 U.S.C. § 1331, as the action arises under the constitution and laws of the United States.

HB 1131 was signed by the governor on March 15, 1993, and by operation of law would have become effective July 1, 1993. Prior to its effective date and following a temporary restraining order issued by this Court and stipulation of counsel, the effective date of the act has been stayed pending final determination of the constitutional questions.

Cross motions for summary judgment have been filed on all issues. The motions before the Court consist of defendants' motion to partially vacate stay and for partial summary judgment on the "informed consent" provisions of the statute (Docket # 71); plaintiffs' motion for summary judgment concerning the challenge to the statute (Docket # 85); and defendants' cross motion for summary judgment on remaining issues and motion to vacate stay (Docket # 99).

### ISSUES

Plaintiffs challenge section 2[1] of HB 1131 which amended SDCL 34-23A-7 relating to the performance of an abortion upon an un-

---

1. Section 2 of HB 1131, amending SDCL 34-23A-7, is as follows:

34-23A-7. No abortion may be performed upon an unemancipated minor or upon a female for whom a guardian has been appointed because of a finding of incompetency, until at least forty-eight hours after written notice of the pending operation has been delivered in the manner specified in this section. The notice shall be addressed to the parent at the usual place of abode of the parent and delivered personally to the parent by the physician or an agent. In lieu of such delivery, notice may be made by certified mail addressed to the parent at the usual place of abode of the parent with return receipt requested and restricted delivery to the addressee, which means a postal employee can only deliver the mail to the authorized addressee. If notice is made by certified mail, the time of delivery shall be deemed to occur at twelve o'clock noon on the next day on which regular mail delivery takes place, subsequent to mailing.

No notice is required under this section if:

emancipated minor,[2] providing for a one-parent notification provision without a judicial bypass. Challenge is also made to that part

(1) The attending physician certifies in the pregnant minor's medical record that, on the basis of the physician's good faith clinical judgment, a medical emergency exists that so complicates the medical condition of a pregnant female as to necessitate the immediate abortion of her pregnancy to avert her death or for which a delay will create serious risk of substantial and irreversible impairment of a major bodily function and there is insufficient time to provide the required notice; or

(2) The person who is entitled to notice certifies in writing that he has been notified; or

(3) The pregnant minor declares, or provides information that indicates, that she is an abused or neglected child as defined in § 26-8A-2 and the attending physician has reported the alleged or suspected abuse or neglect as required in accordance with §§ 26-8A-3, 26-8A-6 and 26-8A-8. In such circumstances, the department of social services, the state's attorney and law enforcement officers to whom the report is made or referred for investigation or litigation shall maintain the confidentiality of the fact that she has sought or obtained an abortion and shall take all necessary steps to ensure that this information is not revealed to her parents.

2. SDCL 25-5-24 defines an emancipated minor as any person under the age of eighteen years who:

(1) Has entered into a valid marriage, whether or not such marriage was terminated by dissolution; or

. . . . .

(3) Has received a declaration of emancipation pursuant to § 25-5-26;

SDCL 25-5-25. Age of majority for certain purposes—Parent or guardian liability. An emancipated minor shall be considered as being over the age of majority for the following purposes:

(1) For the purpose of consenting to medical, chiropractic, optometric, dental or psychiatric care, without parental consent, knowledge or liability; ...

3. Section 4 of HB 1131 amending SDCL 34-23A-10.1 reads as follows:

34-23A-10.1. No abortion may be performed except with the voluntary and informed consent of the female upon whom the abortion is to be performed. Except in the case of a medical emergency, consent to an abortion is voluntary and informed only if:

(1) The female is told the following by the physician who is to perform the abortion or by the referring physician, at least twenty-four hours before the abortion:

(a) The name of the physician who will perform the abortion;

of SDCL 34-23A-10.1 [3] which provides for a 24-hour wait and notice under the informed consent statute, SDCL 34-23A-10.1(1) and (2). The next challenge is to section 7 [4]

(b) The particular medical risks associated with the particular abortion procedure to be employed including, when medically accurate, the risks of infection, hemorrhage, danger to subsequent pregnancies and infertility;

(c) The probable gestational age of the unborn child at the time the abortion is to be performed; and

(d) The medical risks associated with carrying her child to term;

(2) The female is informed, by telephone or in person, by the physician who is to perform the abortion, by the referring physician, or by an agent of either, at least twenty-four hours before the abortion;

(a) That medical assistance benefits may be available for prenatal care, childbirth and neonatal care;

(b) That the father is liable to assist in the support of her child, even in instances in which the father has offered to pay for the abortion; and

(c) That she has the right to review the printed materials described in section 5 of this Act [SDCL 34-23A-10.3]. The physician or his agent shall orally inform the female that the materials have been provided by the State of South Dakota. If the female chooses to view the materials, they shall either be given to her at least twenty-four hours before the abortion or mailed to her at least seventy-two hours before the abortion by certified mail, restricted delivery to addressee, which means the postal employee can only deliver the mail to the addressee;

(3) The female certifies in writing, prior to the abortion, that the information described in subdivisions (1) and (2) of this section has been furnished her, and that she has been informed of her opportunity to review the information described in section 5 of this Act; and

(4) Prior to the performance of the abortion, the physician who is to perform the abortion or his agent receives a copy of the written certification prescribed by subdivision (3).

The physician may provide the information prescribed in subdivision (1) by telephone without conducting a physical examination or tests of the patient, in which case the information required to be supplied may be based on facts supplied the physician by the female and whatever other relevant information is reasonably available to the physician.

4. Section 7 of HB 1131, amending SDCL 34-23A-10.2, is as follows:

34-23A-10.2. A physician who violates § 34-23A-7, § 34-23A-10.1 or section 6 of this Act is guilty of a Class 2 misdemeanor. The court in which a conviction of a violation of § 34-23A-7, § 34-23A-10.1 or section 6 of this

which amended SDCL 34–23A–10.2 to provide a criminal penalty for a violation of SDCL 34–23A–7 (one-parent notification), SDCL 34–23A–10.1 (informed consent), section 6 [5] (medical emergency). Finally, challenge is made to section 8 [6] which amended SDCL 34–23A–22 providing for civil punitive and treble actual damages when an abortion is performed in violation of the provisions of sections 34–23A–2.1, 34–23A–7, and 34–23A–10.1.

## SUMMARY JUDGMENT STANDARD

This case comes before the Court pursuant to Rule 56 of the Federal Rules of Civil Procedure providing for summary judgment.

■■■ Under the summary judgment standard to be applied by the Court, the Court is guided by the trilogy of *Celotex*

Corp. v. Catrett, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); and *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The Court is also mindful of *Commercial Union Insurance Co. v. Schmidt*, 967 F.2d 270, 271–72 (8th Cir.1992), where the court outlined the summary judgment procedure.[7]

■■■ The Court understands that a decision granting summary judgment is subject to review de novo. *Gumersell v. Director, Fed. Emergency Management Agency*, 950 F.2d 550, 553 (8th Cir.1991).

## FINDINGS OF FACT

The Court finds the following undisputed facts:

Act occurs shall report such conviction to the board of medical and osteopathic examiners.

No penalty may be assessed against the female upon whom the abortion is performed or attempted to be performed. No criminal penalty or civil liability for failure to comply with § 34–23A–10.1(2)(c) or that portion of § 34–23A–10.1(3) requiring a written certification that the woman has been informed of her opportunity to review the information referred to in § 34–23A–10.1(2)(c) may be assessed unless the department of health has made the printed materials available at the time the physician or his agent is required to inform the female of her right to review them.

5. Section 6 of HB 1131 added a new section 34–23A–2.1 as follows:

If a medical emergency compels the performance of an abortion, the physician shall inform the female, prior to the abortion if possible, of the medical indications supporting his judgment that an abortion is necessary to avert her death or that a delay will create serious risk of substantial and irreversible impairment of a major bodily function.

6. Section 8 of HB 1131 added a new section 34–23A–22 as follows:

If any abortion occurs which is not in compliance with §§ 34–23–7, 34–23A–10.1 or section 6 of this Act, the person upon whom such an abortion has been performed, and the parent of a minor child upon whom such an abortion was performed, or any of them, may maintain an action against the person who performed the abortion for ten thousand dollars in punitive damages and treble whatever actual damages the plaintiff may have sustained. Any person upon whom such an abortion has been attempted may maintain an ac-

tion against the person who attempted to perform the abortion for five thousand dollars in punitive damages and treble whatever actual damages the plaintiff may have sustained.

If judgment is rendered in favor of the plaintiff in any such action, the court shall also render judgment for a reasonable attorney's fee in favor of the plaintiff against the defendant. If judgment is rendered in favor of the defendant and the court finds that the plaintiff's suit was frivolous and brought in bad faith, the court shall also render judgment for a reasonable attorney's fee in favor of the defendant against the plaintiff.

7. Once the motion for summary judgment is made and supported, it places an affirmative burden on the non-moving party to go beyond the pleadings and "by affidavit or otherwise" designate "specific facts showing that there is a genuine issue for trial." In designating specific facts, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment" because Rule 56(c) requires "that there be no *genuine* issue of *material* fact." In order to determine which facts are material, courts should look to the substantive law in a dispute and identify the facts which are critical to the outcome. A dispute about a material fact is genuine if the evidence is such that a reasonable trier of fact could return a decision in favor of the party opposing summary judgment. In performing the genuineness inquiry, trial courts should believe the evidence of the party opposing summary judgment and all justifiable inferences should be drawn in that party's favor. A court is not to "weigh the evidence and determine the truth of the matter but [instead should] determine whether there is a genuine issue for trial." (Citations omitted.)

1. Buck Williams, M.D., Sioux Falls, South Dakota, is the only physician providing abortion services within the exterior boundaries of South Dakota.

2. Dr. Williams is the only physician providing abortion services in a 235–mile radius of Sioux Falls, which includes the four contiguous states of Minnesota, North Dakota, Nebraska, and Iowa.

3. Dr. Williams currently provides abortions as a one-day service. Abortions are commonly scheduled by telephone on one day and the abortion is provided on another day.

4. During 1991, the latest year for which statistics are available, 486 South Dakota residents received abortions in neighboring states, and 774 South Dakota residents received abortions from Dr. Williams.

5. Approximately 17 percent of the total South Dakota women receiving abortions travel 300 miles or more each way.

6. Patients travel from the extreme western border of the state of South Dakota from cities and towns located in the Black Hills area, a distance of over 300 miles.

7. The Court takes judicial notice of the fact that travel from Rapid City to Sioux Falls via Interstate 90 is 340 miles.

8. Approximately 25 percent of Dr. Williams' patients are women below the federal poverty level.

9. South Dakota has a higher rate of poverty than the national average, including a higher rate of poverty among female head of household with children under five and a higher rate of poverty among its Native American population.

10. Many of Dr. Williams' patients are single women who already have children.

11. Two full days of absence entails loss of hourly wages, child care expenses, and travel expenses and lodging.

12. Confidentiality is a paramount concern for many abortion patients.

13. A telephone interview would approximate three to fifteen minutes, depending upon the questions of the patient.

## DISCUSSION

### 1. *Background*

■ It has been the law since 1973 that there is a right of privacy, a liberty interest protecting a female's right to decide whether to terminate her pregnancy, arising under the Due Process Clause of the Fourteenth Amendment to the Constitution. *Roe v. Wade*, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973).

■ This is not to say that this right is absolute and unqualified. *Roe* recognized that the state has certain rights to be asserted in the abortion decision. *Id.* at 153–55, 93 S.Ct. at 727. These rights, however, may be justified only by a "compelling state interest." Legislative enactments must be narrowly drawn to express only the legitimate interests at stake. *Id.* at 155, 93 S.Ct. at 728 (citing *Griswold v. Connecticut*, 381 U.S. 479, 485, 85 S.Ct. 1678, 1682, 14 L.Ed.2d 510 (1965)), and other cases.

After twenty-one years, the basic holdings of *Roe* were reaffirmed by *Planned Parenthood of Southeastern Pennsylvania v. Casey*, —— U.S. ——, 112 S.Ct. 2791, 120 L.Ed.2d 674 (1992) in the joint opinion of Justices O'Connor, Kennedy, and Souter, joined in part by Justices Stevens and Blackmun. Chief Justice Rehnquist and Justices White, Scalia, and Thomas dissented. To be sure, not all of *Roe*'s holdings have been sustained. *Casey* overruled the strict scrutiny test of *City of Akron v. Akron Center for Reproductive Health, Inc.*, 462 U.S. 416, 103 S.Ct. 2481, 76 L.Ed.2d 687 (1983) (*Akron I*). *Casey*, —— U.S. at ——, 112 S.Ct. at 2817. It also held *Roe*'s trimester framework too rigid and unnecessary. It further clarified the state's involvement in the abortion decision during the first trimester as interpreted in *Roe* by holding the state is not prohibited from regulations which would ensure a thoughtful and informed choice to terminate pregnancy, even during the first trimester. *Id.* at ——, 112 S.Ct. at 2818. The joint opinion held that "[o]nly where state regulation imposes an *undue burden* on a woman's ability to make this abortion decision does the power of the State reach into the heart of the liberty protected by the Due Process

Clause." *Id.* at ——, 112 S.Ct. at 2819 (emphasis supplied).

### 2. *One–Parent Notification Provision Without Bypass*

█ A minor is entitled to a supervised bypass or waiver proceeding to obviate the necessity for parental notice. A court is the usual bypass agency, but it need not be the exclusive one. The purpose of such a proceeding is for the minor to show that she is of sufficient maturity [8] to appreciate the importance of her decision (mature minor) or if she is not of sufficient maturity to make the decision independently, nonetheless the abortion decision without parental notice is in her best interest (best interest minor). Such proceeding must provide for an expeditious resolution of the abortion decision. The minor's confidentiality must also be protected. Whatever procedure is used, it must ensure that parental notice does not amount in fact to a parental veto. *Bellotti v. Baird*, 443 U.S. 622, 99 S.Ct. 3035, 61 L.Ed.2d 797 (1979) (*Bellotti II* ).

█ It is with this background in mind that the Court considers the constitutionality of HB 1131 containing a one-parent notification provision but which does not provide for a supervised bypass procedure. The Court is aided by precedent. *Planned Parenthood of Cent. Mo. v. Danforth*, 428 U.S. 52, 96 S.Ct. 2831, 49 L.Ed.2d 788 (1976) (spousal consent provision and a blanket parental consent requirement held unconstitutional); *H.L. v. Matheson*, 450 U.S. 398, 101 S.Ct. 1164, 67 L.Ed.2d 388 (1981) (Utah statute as applied to an unemancipated minor living with and dependent upon her parents and making no claim or showing as to her maturity or as to her relations with her parents held constitutional); *Akron I*, 462 U.S. at 442–43, 103 S.Ct. at 2499, (Ohio statute requiring parental consent on all second trimester minors is unconstitutional without adequate court bypass); *Hodgson v. Minneso-*

*ta*, 497 U.S. 417, 110 S.Ct. 2926, 111 L.Ed.2d 344 (1990) (both parents' notification requirement of minor's abortion decision without judicial bypass is unconstitutional); *Planned Parenthood Ass'n of Kansas City, Mo. v. Ashcroft*, 655 F.2d 848, 859 (8th Cir.1981) (provision of statute requiring notice to parents of all minors is unconstitutional because it requires notice to parents of minors who are mature or for whom it is not in their best interest to give notice).

The parties cite no authority and the Court has been unable to find authority which establishes that a one-parent notice provision without judicial bypass such as found in SDCL 34–23A–7 is constitutional. In *Hodgson v. Minnesota*, 853 F.2d 1452 (8th Cir. 1988) (en banc), *aff'd*, 497 U.S. 417, 110 S.Ct. 2926, 111 L.Ed.2d 344 (1990), the Court considered a Minnesota statute which required a minor to notify her parents of her desire to obtain an abortion or to seek judicial bypass. The Minnesota district court held the statute *as applied* was unconstitutional. The Supreme Court concluded that the Minnesota statutory plan which included a judicial bypass was constitutional and complied with the principles announced in *Bellotti II, Ashcroft,* and *Matheson*. *Hodgson*, 497 U.S. at 453–55, 110 S.Ct. at 2947.

SDCL 34–23A–7 requires notice only to one parent.[9] It is less restrictive upon the abortion decision than the statute considered in *Hodgson*. Whether there is a one-parent or a two-parent notice provision under the Minnesota statute in *Hodgson* is immaterial in the face of a lack of adequate bypass procedure. Accordingly, this Court focuses on the lack of bypass.

█ State and parental interests must yield to the constitutional right of a mature minor, or of an immature minor whose best interests are contrary to parental involvement, to obtain an abortion without consulting or notifying the parent or parents. *Hodgson*, 853 F.2d at 1455 (citing *Akron I,*

---

8. South Dakota implicitly recognizes the maturity of a 16 year old female to make the decision to give her consent to sexual intercourse. *See* SDCL 22–22–1(5). The age of consent was decreased from 18 years to 16 years in 1972 by chapter 154, section 21, 1972 session laws. *See*

*State v. Heisinger,* 252 N.W.2d 899, 902 (S.D. 1977).

9. SDCL 34–23A–1(3). "Parent," one parent of the pregnant minor or the guardian or conservator of the pregnant female.

462 U.S. at 427–28 n. 10, 103 S.Ct. at 2491 n. 10). Thus, if parental involvement is encouraged by the state it must provide an alternate procedure to which a minor mature enough to make her own decision may turn or to show, if not considered "mature," that the abortion is in her "best interests." *Hodgson,* 853 F.2d at 1456.

Tested by these authorities, this Court holds SDCL 34–23A–7 (chapter 249 1993 session laws, section 2) unconstitutional in not providing such a bypass. The statutory omission constitutes an undue burden on the minor's privacy right to make the abortion decision.

■■■ The state attempts to convince the Court that SDCL 26–8A–2 [10] defining an "abused and neglected child," when construed together with SDCL 34–23A–7(3), constitutes an effective "doctor bypass" for the "best interest" minor. The state contends this doctor bypass saves the statute from constitutional challenge. The state's position is that when information is given which indicates that the minor is abused or neglected, the physician is given statutory authority under SDCL 34–23A–7(3) to perform the abortion without parental notification. The Court is not persuaded. The state's argument proceeds on a false premise, namely, that all pregnant minors, including "mature minors" or "best interest minors" fall within the statutory classification of "abused and neglected children." Thus the state would have the Court apply the statute too narrowly. An effective, alternative bypass procedure would place the decision in the hands of a neutral and detached agency such as a court which would be able to take into consideration the competing interests involved in the abortion decision. This is not to say that a court or other bypass agency has a veto on the abortion decision any more than does the parent. The bypass authority is limited to a factual finding of whether the minor is of sufficient maturity to make the abortion decision or whether the decision is in her best interest. If either a finding of "maturity" or "best interest" is made, the notice is simply not given to the parent. The abortion proceeds without such notice.

The physician performing the abortion can hardly be said to be the neutral and detached agency performing the bypass function. Furthermore, a minor's pregnancy does not automatically reduce the minor to the status of being "abused and neglected." The state's "doctor bypass" theory is unsupported by authority and is overreaching by the state in an attempt to explain the lack of a bypass alternative. To require a minor to be declared an "abused or neglected child" under SDCL 26–8A–2 by reason of the status of being pregnant simply burdens her constitutionally protected right of privacy. The Court finds the statute unconstitutional.

#### 3. *48–Hour Wait*

■■■ SDCL 34–23A–7 provides that "no abortion may be performed upon an unemancipated minor or upon a female for whom a guardian has been appointed because of a finding of incompetency, until at least forty-eight hours after written notice of the pending operation has been delivered in the manner specified in this section." The statute

---

**10.** 26–8A–2. Abused or neglected child defined. In this chapter and chapter 26–7A, the term "abused or neglected child" means a child:

(1) Whose parent, guardian, or custodian has abandoned the child or has subjected the child to mistreatment or abuse;
(2) Who lacks proper parental care through the actions or omissions of the child's parent, guardian or custodian;
(3) Whose environment is injurious to the child's welfare;
(4) Whose parent, guardian or custodian fails or refuses to provide proper or necessary subsistence, supervision, education, medical care or any other care necessary for the child's health, guidance or well-being;

(5) Who is homeless, without proper care or not domiciled with the child's parent, guardian or custodian through no fault of the child's parent, guardian or custodian;
(6) Who is threatened with substantial harm;
(7) Who has sustained emotional harm or mental injury as indicated by an injury to the child's intellectual or psychological capacity evidenced by an observable and substantial impairment in the child's ability to function within the child's normal range of performance and behavior, with due regard to the child's culture; or
(8) Who is subject to sexual abuse, sexual molestation or sexual exploitation by the child's parent, guardian, custodian or any other person responsible for the child's care.

then authorizes notice to be delivered personally to the parent by either the physician or an agent of the physician. In lieu of personal delivery notice may be made by certified mail. It also provides for an exception in the case of (1) medical emergency; (2) waiver of notice; or (3) a declaration that the minor is an abused or neglected child as defined in SDCL 26–8A–2 which has been reported to appropriate authorities.

In *Hodgson*, 497 U.S. at 419–20, 110 S.Ct. at 2929, the Court discussed the rationale for such waiting period. The Court held that "[t]o the extent that ... the state statute requires that a minor wait 48 hours after notifying a single parent of her intention to obtain an abortion, it reasonably furthers the legitimate state interest in ensuring that the minor's decision is knowing and intelligent." The decision in *Hodgson* forecloses the issue of the 48–hour wait as it pertains to an unemancipated minor. The Court therefore finds the 48–hour waiting period constitutional. It strikes the balance between the competing interests involved.

### 4. *Civil Penalty Provision*

█ HB 1131 added a new section providing for a civil cause of action against a person who performs an abortion without complying with the requirements of the statute. The section provides in part that the parent of a minor child or the minor child "may maintain an action against the person who performed the abortion for ten thousand dollars in punitive damages and treble whatever actual damages the plaintiff may have sustained. Any person upon whom such an abortion has been attempted may maintain an action against the person who attempted to perform the abortion for five thousand dollars in punitive damages and treble whatever actual damages the plaintiff may have sustained." The statute further provides for a judgment of reasonable attorney's fees in favor of the plaintiff, or in the case of a suit that was found to be frivolous and brought in bad faith, attorney's fees are awardable in favor of defendant as against the plaintiff. SDCL 34–23A–22.

The statute appears to be substantially the same and perhaps taken from the North Dakota Century Code, chapter 14–02.1–03.2.[11] The issue of the constitutionality of the North Dakota statute was not raised by the parties in *Fargo Women's Health Organization v. Sinner*, 819 F.Supp. 862 (D.N.D. 1993).[12]

█ The state's position is that the punitive damage award constitutes an upper limit or a "cap" on damages and a court could,

---

**11.** 14–02.1–03.2 Civil damages for performance of abortions without informed consent.

Any person upon whom an abortion has been performed without informed consent as required by sections 14–02.1–02, 14–02.1–02.1, subsection 1 of section 14–02.1–03, 14–02.1–03.2, and 14–02.1–03.3 may maintain an action against the person who performed the abortion for ten thousand dollars in punitive damages and treble whatever actual damages the plaintiff may have sustained. Any person upon whom an abortion has been attempted without complying with sections 14–02.1–02, 14–02.1–02.1, subsection 1 of section 14–02.1–03, 14–02.1–03.2, and 14–02.1–03.3 may maintain an action against the person who attempted to perform the abortion for five thousand dollars in punitive damages and treble whatever actual damages the plaintiff may have sustained.

**12.** In addition to the North Dakota statute, provisions in other states provide civil penalties to a greater or lesser degree. Tennessee Code Annotated, section 37–10–307, provides in part, "The law of this state shall not be construed to preclude the award of exemplary damages in any appropriate civil action relevant to violations of this part [parental consent for abortion by minors]." West's Wisconsin Statutes Annotated, section 895.037 provides a penalty provision which reads in part, "Any person who ... intentionally performs or induces an abortion on or for a minor whom the person knows or has reason to know is not an emancipated minor may be required to forfeit not more than $10,-000."

Pennsylvania Consolidated Statutes Annotated, section 3217, provides in part, "Any physician who knowingly violates any of the provisions of section 3204 (relating to medical consultation and judgment) or 3205 (relating to informed consent) shall, in addition to any other penalty prescribed in this chapter, be civilly liable to his patient for any damages caused thereby and, in addition, shall be liable to his patient for punitive damages in the amount of $5,000, ..."

Finally, the Code of Laws of South Carolina, section 44–41–35, provides in part, "The law of this State does not preclude the award of exemplary damages in an appropriate civil action relevant to violations concerning a minor."

pursuant to the statute,[13] award less than $10,000 or less than $5,000 in case of an attempt. The clear and unambiguous wording of the statute provides for a strict liability of the $10,000 and $5,000 damages amount. If the legislature had intended these amounts to be only a cap, it knew how to use proper language to accomplish its intent. When in 1986 the legislature set a limitation on damages in medical malpractice actions of $1 million in total damages, it said, "damages which may be awarded *may not exceed* the sum of one million dollars." SDCL 21–3–11 (emphasis supplied). No such form of the language appears in newly-enacted SDCL 34–23A–22. The state attempts to buttress its position by the argument that the courts of South Dakota would interpret this section with reference to other South Dakota punitive damage statutes. Such argument misses the point. SDCL 34–23A–22 is clear and unambiguous. Because it is clear and unambiguous, the Court cannot resort to rules of statutory construction to determine its true meaning. The Supreme Court of South Dakota stated:

> The purpose of statutory construction is to discover the true intention of the law which is to be ascertained primarily from the language expressed in the statute. The intent of a statute is determined from what the legislature said, rather than what the courts think it should have said, and the court must confine itself to the language used.

> Words and phrases in a statute must be given their plain meaning and effect. When the language of a statute is clear, certain and unambiguous, there is no reason for construction, and the Court's only function is to declare the meaning of the statute as clearly expressed.

*US West Communications v. Public Utilities Commission,* 505 N.W.2d 115, 123 (S.D.1993) (citing *Appeal of AT & T Info. Sys.,* 405 N.W.2d 24 (S.D.1987)). Accordingly, the Court can only conclude the statute to be a strict liability statute which chills the abor-

tion decision. The statute, providing as it does for strict liability, constitutes a constitutionally impermissible obstacle to the woman's abortion decision. South Dakota has one physician providing abortion services. If this statutory provision is allowed to stand, there may not be any provider willing to subject himself or herself to the vagaries of the statute. What then would be the choice remaining for those women who desire to exercise their constitutional rights consistent with *Roe* and *Casey*? The Court finds that SDCL 34–23A–22 is unconstitutional.

### 5. *Informed Consent*

■ The state's informed consent provision is SDCL 34–23A–10.1(1)–(4). The statute merely codifies, in the abortion context, what in the absence of such context would be the duty of a physician performing any medical procedure. Physicians practicing in South Dakota have a common law duty to ensure that their patients' consent to medical treatment is informed. According to the South Dakota Supreme Court,

> A doctor has the duty to make a reasonable disclosure to his patient of the significant risks in view of the gravity of the patient's condition, the probabilities of success, and any alternative treatment or procedures, if such are reasonably appropriate, so that the patient has the information reasonably necessary to form the basis of an intelligent and informed consent to the proposed treatment or procedure.

*Cunningham v. Yankton Clinic, P.A.,* 262 N.W.2d 508, 511 (S.D.1978). The failure by a physician to obtain informed consent in the case of any medical treatment could expose the physician to a malpractice tort claim and its consequent damages of up to $1 million. Thus, since a physician is already required to disclose this type of information under the common law, the disclosure required by SDCL 34–23A–10.1(1)–(4) does not substantially interfere with the woman's right of

---

**13.** The statute providing for both treble damages and punitive damages of $10,000 may itself be contrary to the law of South Dakota. As late as 1993 the South Dakota Supreme Court held that where a statute provided for double damages, further punitive damages are not recoverable. *Nelson v. WEB Water Dev. Ass'n, Inc.,* 507 N.W.2d 691 (S.D.1993). That issue, however, is not before this Court.

choice.[14] This is the type of information which would have to be included in a reasonable disclosure absent such a statute. The statute merely defines what otherwise would be required in a properly informed consent decision. It therefore may reasonably offer the physician more and not less protection from malpractice claims. Arguably, a greater number of physicians, not fewer, will be willing to provide abortion services.

■■■ A state's interest in potential life may be advanced by the enactment of legislation designed to ensure that a woman's decision to terminate a pregnancy will be informed. *Casey,* ——— U.S. at ———, 112 S.Ct. at 2821. The legislation, however, may not constitute an undue burden on the woman's choice. *Id.* at ———, 112 S.Ct. at 2820. Several cases have considered the constitutionality of the informed consent legislation which has been enacted by various states. *Id.* at ———, 112 S.Ct. at 2826 (holding the Pennsylvania informed consent statute constitutional because it was not unduly burdensome); *Barnes v. Moore,* 970 F.2d 12, 15 (5th Cir. 1992) (holding the Mississippi informed consent statute constitutional due to its similarity to the Pennsylvania statute); *Fargo Women's Health Org. v. Schafer,* 18 F.3d 526, 530 (8th Cir.1994) (holding the North Dakota informed consent statute constitutional due to its similarity to the Pennsylvania statute and because it was not unduly burdensome).

SDCL 34–23A–10.1(1)–(4) contains provisions substantially similar to the statutes which have been declared constitutional in *Casey, Barnes,* and *Schafer.* In addition, the alleged impact of the statute is also substantially similar to the impact found by the district court in *Casey.*

In analyzing a Utah informed consent statute, the Utah district court said,

> Where a state passes abortion legislation which is less than or equal to the restrictions imposed by the Pennsylvania law, and where the plaintiffs are unable to allege any impact from the legislation which is more burdensome than was found by the

district court in *Casey,* there is no viable cause of action.

*Utah Women's Clinic, Inc. v. Leavitt,* 844 F.Supp. 1482, 1491 (D.Utah 1994).

The South Dakota statute dictates certain information be provided to the woman before she can effectively give informed consent. This information includes the name of the doctor who will perform the abortion, the risks associated with the abortion procedure and with continuing the pregnancy, and the probable gestational age of the fetus. This information must be given by either the physician who will perform the abortion or the referring physician. In *Casey,* the Supreme Court overruled the sections of *Akron I,* 462 U.S. at 416, 103 S.Ct. at 2481 and *Thornburgh v. American College of Obstetricians & Gynecologists,* 476 U.S. 747, 106 S.Ct. 2169, 90 L.Ed.2d 779 (1986) which held that a state could not require a physician to provide a woman with certain information designed to dissuade her from having an abortion. *Casey,* ——— U.S. at ———, 112 S.Ct. at 2823. The Supreme Court held that requiring a doctor to make certain information available to the woman is permissible as long as the information is truthful and not misleading. *Id.* at ———, 112 S.Ct. at 2823. Requiring certain information be made available was not an undue burden. *Id.* at ———, 112 S.Ct. at 2824.

#### 6. *Criminal Penalty*

■■■ SDCL 22–6–2 divides misdemeanor crimes into two classes, distinguished by the penalty of the violation. A Class 1 misdemeanor carries with it a penalty of one year imprisonment in a county jail, a $1,000 fine, or both. A Class 2 misdemeanor provides for thirty-day imprisonment in a county jail, a $100 fine, or both. A Class 2 misdemeanor with its permitted loss of liberty is not a minimum sanction. South Dakota also provides for petty offenses, e.g., speeding and the like. Petty offenses are civil proceedings and are governed by the procedure set forth in SDCL 23–1A. *See* SDCL 22–6–7. Petty

---

**14.** While the Court has some concern over the impact of SDCL 34–23A–10(2)(c) which refers to the review of printed material described in SDCL 34–23A–10.3 upon the abortion decision, the fact that the female has a right to either choose or refuse such material saves the provision from constitutional infirmity.

offenses are not crimes. A misdemeanor, whether Class 1 or Class 2, is a crime.

■ A physician who violates SDCL 34–23A–2.1 (medical emergency), 34–23A–7 (abortion on unemancipated minor), or 34–23A–10.1 (abortion without informed consent) is guilty of a Class 2 misdemeanor. The court in which a conviction occurs is required to report such conviction to the Board of Medical and Osteopathic Examiners. SDCL 34–23A–10.2. This penalty clause carries with it severe implications to the physician involving a risk of loss of personal liberty and the license to practice medicine.

On its face SDCL 34–23A–10.2 does not contain a scienter requirement. To this the state agrees. The state argues that a South Dakota court in the application of the statute will infer, and therefore include, a scienter clause. Such assurance is of little comfort to a physician who desires to conform his conduct to the law.

In referring to the words "motor vehicle" used in the Motor Vehicle Theft Act (18 U.S.C. § 408), Mr. Justice Holmes stated, "[I]t is reasonable that a fair warning should be given to the world in language that the common world will understand, of what the law intends to do if a certain line is passed. To make the warning fair, so far as possible, the line should be clear...." *McBoyle v. United States,* 283 U.S. 25, 27, 51 S.Ct. 340, 341, 75 L.Ed. 816 (1931). The early case of *McBoyle* was quoted with approval as late as 1994 in *Ratzlaf v. United States,* —— U.S. ——, ——, 114 S.Ct. 655, 663, 126 L.Ed.2d 615 (1994).

The question to this Court then is: By what standard would a physician's conduct be judged under SDCL 34–23A–10.2? While a South Dakota court may include a scienter requirement of "knowingly" or "willfully" or perhaps some other term describing the mental state required, why should a physician desiring to comply with the law in good faith have to guess at his or her peril as to how a court will define the scienter requirement? The posing of the question seems to suggest the answer. The statute as drawn acts as a chilling effect upon a physician's desire to continue performing abortions under the law as written. This may be espe-cially chilling in a state such as South Dakota where, at the present time, there is only one physician willing to perform abortions. It seems to this Court that where a basic constitutional right of the female is involved, that the chilling effect becomes much more significant as it impacts the abortion decision and the ability to find competent physicians to perform the procedure. Accordingly, the Court finds that the statute is vague, uncertain, and lacks an accurate definition of the mental state required. It is simply another obstacle placed upon a woman's privacy right. The Court finds that SDCL 34–23A–10.2 is unconstitutional.

### 7. *24–Hour Waiting Period of SDCL 34–23A–10.1(2)*

■ Plaintiffs' position is that the South Dakota informed consent provision is unduly burdensome in that it requires the doctor who is to perform the abortion or the referring doctor to provide the patient with certain information 24 hours before the abortion, either by phone or in person. According to plaintiffs, this would impose an undue burden because Dr. Williams is the only doctor in South Dakota who performs abortions. It would take him seven hours a week to make the required phone calls, and this would cause him to lose revenue which would have to be passed on to his patients at an increased cost of $60 per abortion.

Both the Pennsylvania and the Mississippi statutes require that similar information be provided by a physician. In analyzing the Pennsylvania statute, the Supreme Court held that to require a doctor to give information is not an undue burden. It is a reasonable way to assure informed consent. *Casey,* —— U.S. at —— – ——, 112 S.Ct. at 2824–25. The statute at issue in *Casey* was even more restrictive than the statute at issue in this case. In Pennsylvania, there is no provision allowing notification by phone. Thus, two trips to the doctor are required before an abortion may be performed. *Id.* at ——, 112 S.Ct. at 2825. The Supreme Court held, nevertheless, that the increased costs which this would cause were not a substantial obstacle. *Id.* at ——, 112 S.Ct. at 2825. In

addition, the South Dakota statute does allow for the referring physician to inform the woman of this information. Thus, Dr. Williams personally would not necessarily have to contact all of his patients. The doctor notification requirement is not an undue burden. The 24–hour waiting period of SDCL 34–23A–10.1(2) is not unconstitutional.

### 8. *Exception for Rape Victims*

 Finally, plaintiffs contend that the fact that the South Dakota statute has no exception for rape victims or for women upon whom the information would have an adverse effect makes the statute unconstitutional under *Casey.*

The Pennsylvania informed consent statute provides,

> No physician shall be guilty of violating this section for failure to furnish the information required by subsection (a) if he or she can demonstrate, by a preponderance of the evidence, that he or she reasonably believed that furnishing the information would have resulted in a severely adverse effect on the physical or mental health of the patient.

18 Pa.Cons.Stat.Ann. § 3205(c). Although the Mississippi, North Dakota, and South Dakota statutes do not contain this exact language, these statutes do have similar exceptions for the health of the woman. These statutes all contain a medical emergency exception which provides that the requirements of the informed consent statute do not apply in the case of a medical emergency. Miss. Code Ann. § 41–41–33; N.D.Cent.Code § 14–02.1–03; SDCL 34–23A–10.1. According to the Eighth Circuit Court of Appeals, this exception for the health of the woman is similar to the Pennsylvania exception. *Schafer,* 18 F.3d at 533.

The Pennsylvania statute also has a provision which allows information concerning a father's liability for child support to be omitted when the woman seeking the abortion had been raped. 18 Pa.Cons.Stat.Ann. § 3205(a)(2)(iii). The rape exception is not present in the Mississippi statute analyzed in *Barnes,* in the North Dakota statute analyzed in *Schafer,* or in the South Dakota statute. The Eighth Circuit Court of Appeals and the Fifth Circuit Court of Appeals declined to find this exception necessary to the constitutionality of the statutes considered. *Schafer,* 18 F.3d at 534; *Barnes,* 970 F.2d at 15. Therefore, this Court also must find that the rape exception is not essential to hold the South Dakota statute constitutional.

### CONCLUSION

The Court concludes that defendants' motion to vacate stay and for partial summary judgment will be granted. The Court finds that SDCL 34–23A–10.1 is constitutional.

The Court concludes that plaintiffs' motion for summary judgment declaring the provisions of SDCL 34–23A–7 unconstitutional in not providing a bypass is granted.

The Court concludes that plaintiffs' motion for summary judgment declaring SDCL 34–23A–22 and the penalty portion of SDCL 34–23A–10.2 as unconstitutional is granted.

Judgment shall be entered accordingly.